410 Mass. 61                                          61

Jimmy's Diner, Inc. *v.* Liquor Liability Joint Underwriting Association of Massachusetts.

JIMMY'S DINER, INC.[1] *vs.* THE LIQUOR LIABILITY JOINT
UNDERWRITING ASSOCIATION OF MASSACHUSETTS.

Suffolk. March 6, 1991. - May 8, 1991.

Present: LIACOS, C.J., ABRAMS, NOLAN, & LYNCH, JJ.

*Insurance*, Liquor liability insurance, Insurer's obligation to defend, Construction of policy.

A civil action by a patron of an establishment that served alcoholic liquors, alleging assault and battery upon him by an employee of the establishment, did not state a claim that the establishment's insurer would be obligated to pay under its liquor liability insurance policy covering negligence "in the distribution, sale, or serving of any alcoholic beverage"; consequently, the insurer had no duty to defend the action. [62-65]

CIVIL ACTION commenced in the Superior Court Department on October 26, 1989.

The case was heard by *J. Owen Todd*, J., on motions for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*James E. Grumbach* (*James L. Rogal* with him) for the plaintiff.

*Steven L. Schreckinger* (*Ellen B. King* with him) for the defendant.

NOLAN, J. In March, 1989, one Preston Gardner commenced an action against the plaintiff, Jimmy's Diner, Inc. (Jimmy's), alleging that he had been the victim of an assault and battery at the hands of an employee of Jimmy's. At the time of the alleged incident, Jimmy's had a liquor liability insurance policy from the defendant, The Liquor Liability Joint Underwriting Association of Massachusetts (LLJUA).

---

[1]Also known as Conway's.

Jimmy's promptly notified the LLJUA of the Gardner complaint, requesting that the LLJUA defend the claim pursuant to the policy provisions. The LLJUA declined to defend, stating that the action was not covered under the policy.

Jimmy's then brought this action, seeking a declaration of the rights and liabilities of the parties, as well as damages under G. L. c. 93A (1988 ed.). The judge correctly ruled that there was no genuine issue of any material fact, and the Superior Court entered judgment in favor of the LLJUA. We now affirm the judgment of the Superior Court.

It is well settled that "the question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state . . . a claim covered by the policy terms, the insurer must undertake the defense." *Continental Casualty Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146 (1984), quoting *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983). We therefore turn to a comparative examination of the terms of the policy and the allegations in the Gardner complaint.

The policy states, in relevant part, that the LLJUA "will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as 'damages' because of 'bodily injury' to any person, caused by an occurrence, if such liability is imposed upon the Insured by reason of the negligence of the Insured in the distribution, sale or serving of any alcoholic beverage at the Insured premises. *We* [LLJUA] *shall have the* right and *duty to defend any suit against the Insured seeking such 'damages,'* even if the allegations of the suit are groundless, false, or fraudulent" (emphasis added). An "occurrence" is defined in the policy as an "accident" which is "neither expected nor intended from the standpoint of the Insured." Under the policy, an employee qualifies as an "Insured."[2]

---

[2]Section II of the policy states in part: "B. Each of the following is also an Insured. 1. Your employees or agents, but only for acts within the scope of their employment or agency by you."

The Gardner complaint alleges that on or about May 16, 1987, Gardner had gone to Jimmy's for the purpose of purchasing and consuming alcoholic beverages. The complaint further alleges that an employee of Jimmy's asked Gardner to leave the premises and, as Gardner was leaving, repeatedly punched and kicked him about the head, face, and body, causing injury. There is no allegation in the complaint that the employee had been drinking prior to the incident. Gardner's answers to interrogatories more extensively described the incident, alleging that the conflict between Gardner and the employee occurred when Gardner, then allegedly forty-five years old, refused to produce identification proving himself to be of legal drinking age.

The Superior Court judge held in favor of the LLJUA for two reasons. First, the judge held that the Gardner action did not seek to impose liability on Jimmy's "by reason of the negligence of the Insured in the distribution, sale or serving of alcoholic beverages." Second, the judge held that, because the conduct alleged in the complaint, assault and battery, was intentional, it was therefore "expected or intended" by the insured, and was not an "occurrence" under the policy.

Jimmy's argues that the conduct alleged in the Gardner complaint could describe a negligent occurrence.[3] Jimmy's asserts that its employee had a limited privilege to use force to eject Gardner from the premises, because he had refused to produce identification demonstrating that he was of legal drinking age. Jimmy's further asserts that the employee could have lost this privilege by negligently using more force

---

[3]Jimmy's initially asserts that the LLJUA is estopped from relying on the absence of negligence because its initial letter denying coverage stated only that there were no "liquor allegations" in the Gardner complaint. Jimmy's cites several cases for the proposition that an insurer, once having disclaimed coverage on one ground, may not later disclaim for a different reason. See *Milton Ice Co.* v. *Travelers Indem. Co.*, 320 Mass 719 (1947); *Fuller* v. *Home Indem. Co.*, 318 Mass. 37 (1945); *Trucken* v. *Metropolitan Life Ins. Co.*, 303 Mass. 501 (1939). Each of those cases, however, involved the insurer relying secondarily on the failure of the insured to submit a formal proof of loss in the prescribed time when the company's initial disclaimer for other reasons likely inhibited the insured from doing so. In this case, the asserted second ground did not prejudice the insured in any manner. The LLJUA, therefore, is not estopped from asserting that there is no coverage under the policy.

than was necessary to effect the removal of the patron. In such a case, Jimmy's argues, the bodily injury would be neither expected nor intended from the standpoint of the insured.

Even conceding, arguendo, that the employee could have negligently used excessive force, but see *Newton* v. *Krasnigor*, 404 Mass. 682, 685 (1989) (intent to cause any injury, no matter how slight, excluded from coverage), to be covered under the policy, such negligence must be "in the distribution, sale or serving of any alcoholic beverage." Jimmy's asserts that, as an incident to serving alcoholic beverages, it was required to ensure that no such beverages were served to minors.[4] But for the distribution, sale, or service of alcoholic beverages, the conduct in the complaint would not have occurred.

The Gardner complaint does not allege that Jimmy's negligently sold alcohol, negligently distributed alcohol, or negligently served alcohol. At most, and aided by a most generous reading, the complaint alleges that Jimmy's was negligent in performing some of the collateral activities associated with the distribution, sale, or serving of alcohol. This is not enough to state a claim covered under the policy.

The LLJUA is a statutorily mandated agglomeration of every personal liability insurer operating in the Commonwealth. St. 1985, c. 223. The LLJUA is directed by its enabling statute to issue policies of "liquor legal liability insurance," defined as "insurance coverage . . . as the result of negligence in the distribution, sale or serving of alcohol." This language is substantially the same as that employed in the policy at issue here. Because the relevant policy language has been mandated by the Legislature, the general rule that any ambiguity ought to be resolved in favor of the insured, therefore, is inapplicable in this case. See *Bilodeau* v. *Lum-*

---

[4]Regulation 1:07(f) of the Licensing Board for the city of Boston states: "Licensees are responsible for ensuring that minors are not served alcoholic beverages and are not drinking alcoholic beverages on the licensed premises, whether served to them by an employee or handed to them by another patron. Licensees who do not have the ability to keep track of the drinking activity of minors at the premises may exclude minors from coming onto the premises in order to meet the burden of ensuring that there is no underage drinking at the premises . . . ."

*bermens Mut. Casualty Co.*, 392 Mass. 537, 541 (1984). "Instead, we must ascertain 'the fair meaning of the language used, as applied to the subject matter.' " *Id.*, quoting *Sav-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971).

The liquor liability policy, by its own terms and those of the statute, is not a general liability policy for establishments which serve alcohol. It is a specific risk policy, designed by the Legislature to provide such establishments with coverage against liability imposed because alcohol was negligently given to an individual with resulting injury for which damages are sought. Liability arising from the negligent actions of an overzealous "bouncer" is not the type of liability for which the Legislature determined there should be coverage.

Because the Gardner complaint did not state a claim which could result in liability which the LLJUA would be obligated to pay, the LLJUA did not have a duty to defend Jimmy's in that action. Because the LLJUA did not violate its obligations under the policy, it also did not violate G. L. c. 93A. The Superior Court correctly entered summary judgment on behalf of the LLJUA.

*Judgment affirmed.*