LIBERTY MUTUAL INSURANCE COMPANY *vs.* SCA
SERVICES, INC. & others.[1]

Suffolk. December 4, 1991. - March 26, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Insurance*, Comprehensive liability insurance, Pollution exclusion clause, Defense of proceedings against insured, Coverage, Construction of policy. *Contract*, Insurance, Construction of contract. *Hazardous Materials*. *Words*, "Sudden and accidental."

In an action for damages caused by hazardous waste leaching from a landfill, the allegations in the complaint that the injury was caused by certain waste disposal practices, occurring continuously over a protracted period of time as part of a regular business activity, did not state a claim under the "sudden and accidental" exception to the pollution exclusion clause of a comprehensive general liability insurance policy [334-337]; on the record presented in a proceeding under G. L. c. 231A, insurers were entitled to a declaration that they were not obligated under that policy to defend or indemnify their insured, a refuse collection concern, in the action for damages [337-339].

CIVIL ACTION commenced in the Superior Court Department on November 21, 1988.

The case was heard by *Elbert Tuttle*, J., on motions for summary judgment.

An application for leave to prosecute an interlocutory appeal was allowed in the Appeals Court by *Christopher J. Armstrong*, J. The Supreme Judicial Court transferred the case on its own initiative.

*Ralph T. Lepore, III* (*Janice Kelley Rowan* with him) for the plaintiff.

---

[1]Transportation Insurance Company (Transportation) and Hartford Accident & Indemnity Company (Hartford). We acknowledge the brief, amicus curiae, filed by the Insurance Environmental Litigation Association and Commercial Union Insurance Company.

*Michael F. Aylward* (*Laurie J. Condos* with him) for Transportation Insurance Company.

*Fred A. Kelly, Jr.* (*Gregory P. Deschenes* with him) for Hartford Accident & Indemnity Company.

*James J. Dillon* (*Kenneth J. Parsigian* with him) for SCA Services, Inc.

*Rosanna Sattler, Peter G. Hermes & Molly H. Sherden*; & *Thomas W. Brunner, Laura A. Foggan & Carol Barthel* of the District of Columbia, for Insurance Environmental Litigation Association & another, amici curiae, submitted a brief.

GREANEY, J. Liberty Mutual Insurance Company brought this action in the Superior Court seeking a declaration under G. L. c. 231A (1990 ed.) that it was not obligated to defend or indemnify its insured, SCA Services, Inc. (SCA), in an action brought by the State of New York and the town of Tusten, New York, for damages caused by hazardous waste leaching out of a landfill in Tusten to which SCA brought such waste for disposal. Liberty Mutual's complaint for declaratory relief also sought a judicial determination of the rights and liabilities of SCA's other insurers.[2] On cross-motions for summary judgment, a judge of the Superior Court ruled in favor of SCA and entered an order determining that Liberty Mutual, Transportation, and Hartford have a duty to defend SCA in the underlying New York action. The three insurers sought relief in the Appeals Court pursuant to G. L. c. 231, § 118, first par. (1990 ed.), and a single justice of that court allowed them to prosecute immediate appeals from the Superior Court order. We transferred the case to this court on our own motion. We conclude that the insurers are under no duty to defend SCA in the underlying action.

"[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provi-

---

[2]Seven other insurers were named in Liberty Mutual's complaint. Of those other insurers, only Transportation and Hartford remain parties to this appeal.

sions: if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense . . . . Otherwise stated, the process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy." (Citations omitted.) *Continental Casualty Co.* v. *Gilbane Bldg. Co.*, 391 Mass. 143, 146-147 (1984), quoting *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318 (1983). See also *Jimmy's Diner, Inc.* v. *Liquor Liab. Joint Underwriting Ass'n of Mass.*, 410 Mass. 61, 62 (1991); *Boston Symphony Orchestra, Inc.* v. *Commercial Union Ins. Co.*, 406 Mass. 7, 10-11 (1989); *Lusalon, Inc.* v. *Hartford Accident & Indem. Co.*, 400 Mass. 767, 772 (1987).

The underlying action which SCA claims the insurers are obligated to defend was brought in the United States District Court for the Southern District of New York by the State of New York and the town of Tusten, New York, where the landfill is located. The complaint charges that SCA, whose business is described in the policies as "refuse collection" and "private sanitation," transported industrial and chemical wastes to the Tusten landfill for disposal during 1973 and 1974. SCA is alleged to have acted in concert with three co-defendants: the operator of the landfill, its owner, and an individual who arranged for others to dispose of waste at the site. The complaint asserts that the site has been determined to be an "open dump" by the New York State Department of Environmental Conservation under criteria established by Federal law. The site is proximate to private homes and property, to a public drinking water well that provides water to the inhabitants of Tusten, and to the Delaware River, which furnishes public drinking water for communities in Pennsylvania and New Jersey. The surrounding area receives extensive use from recreational and commercial fishermen, and is a known region of bald eagle habitat. The complaint also asserts that the "site [has been] found to be in violation

of Federal and State standards pertaining to the protection of endangered species (proximity to bald eagle habitat), prohibition of groundwater contamination (containing arsenic, barium, lead, iron, and various organic chemicals), and protection from disease (inadequate landfill cover)."

The complaint includes the specific allegations against the involvement of SCA in paragraphs numbered therein as follows:

"24. In 1973, SCA, through its agents, servants and employees, contacted [the landfill operator] and arranged to dispose of industrial and chemical wastes at the . . . landfill site.

"25. Pursuant to this arrangement, several thousand barrels of industrial and chemical wastes were transported to the site by SCA during 1973 and 1974. Many of these wastes contained 'hazardous substances.'

"26. SCA delivered these wastes to the site in trucks driven by its own employees, or contracted with private parties to drive SCA trucks containing wastes to the site.

"27. At the time SCA arranged for disposal of these wastes, it knew or should have known that they were noxious, dangerous and hazardous substances, and could harm the land, water and air resources of the State of New York and human, animal and plant life if they were not disposed of in a manner which would prevent their release into the environment.

"28. SCA knew or should have known that these wastes were deposited directly into the ground at the site in trenches dug for that purpose."

. . .

"46. Wastes accepted by [the landfill operator] were disposed of at the site in trenches dug by him for that purpose. Barrels of waste were dumped into the open trenches and flattened with a bulldozer, or the contents of the barrels were emptied into the trenches and the barrels salvaged for reuse."

The complaint goes on to assert that "[h]azardous substances disposed of at the site remain there in open trenches, in the ground and groundwater. Wastes deposited at the site have been and continue to be released into the air, soil and groundwater in the vicinity of the site and into the Delaware River." The complaint states three claims for relief: (1) recovery of response costs under CERCLA, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. §§ 9601-9657 [1982]);[3] (2) public nuisance; and (3) restitution.

In the comprehensive general liability insurance policies issued to SCA by Liberty Mutual, Transportation, and Hartford, each insurer agrees, subject to certain exclusions, to provide coverage for liability due to property damage caused by an "occurrence." The policies define "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." Each policy also contains a pollution exclusion clause, which states that the insurance does not apply to "property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes; acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; *but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental*" (emphasis supplied). Under the terms of these policies, the insurers would be obligated to defend SCA in the underlying lawsuit pending in the Federal District Court in New York if the complaint in that suit was reasonably susceptible of an interpretation that

---

[3] The complaint alleges that SCA is liable under § 107 (a) (4) of CERCLA, 42 U.S.C. § 9607 (a) (4) (1982), as a "person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities or sites selected by such person." As we noted in *Hazen Paper Co. v. United States Fidelity & Guar. Co.*, 407 Mass. 689, 696-697 (1990), liability under CERCLA is not based on fault and the available defenses are very limited.

the release of pollutants was "sudden and accidental." See *Lumbermens Mut. Casualty Co.* v. *Belleville Indus. Inc.*, 407 Mass. 675, 677-683 (1990); *Hazen Paper Co.* v. *United States Fidelity & Guar. Co.*, 407 Mass. 689, 692 (1990). If the underlying complaint does not allege a "sudden and accidental" discharge, the resulting damage is eliminated from coverage by the exclusion clause, even though the discharge might qualify as an "occurrence" within the policy terms. A threshold question, therefore, is whether, applying the comparison test stated above, the complaint in the underlying New York action, alleges a "sudden and accidental" release of pollutants.[4] We conclude that it does not.

We construed the "sudden and accidental" exception to the pollution exclusion clause in *Lumbermens Mut. Casualty Co.* v. *Belleville Indus.*, *supra* at 679-683. In that decision, we held that the word "sudden" has a temporal element, and that "only an abrupt discharge or release of pollutants falls within the exception." *Id.* at 680-681 & n.4. We rejected an alternative interpretation that the word "sudden" may also mean merely "unexpected," and should be construed in this way on the principle that ambiguities in an insurance contract are construed against the insurer and in favor of the insured.[5] See *Claussen* v. *Aetna Casualty & Sur. Co.*, 259 Ga. 333, 338 (1989); *Just* v. *Land Reclamation, Ltd.*, 155 Wis. 2d 737, 746 (1990).

---

[4]We also keep in mind that "the pleading test for determination of the duty to defend is based exclusively on the facts as alleged rather than the facts as they actually are. 'The duty to defend is broader than the duty to pay or indemnify . . . [T]he duty to indemnify, i.e., ultimate liability, depends . . . upon the true facts.' " (Citations omitted.) *Travelers Indem. Co.* v. *Dingwell*, 414 A.2d 220, 224 (Me. 1980), quoting *American Policyholders' Ins. Co.* v. *Cumberland Cold Storage Co.*, 373 A.2d 247, 249-250 (Me. 1977).

[5]In granting summary judgment in favor of SCA, the judge relied on *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648, 651-652 (1985), which adopted this alternative interpretation, holding that the word "sudden" was ambiguous and, therefore, its meaning should be resolved against the insurer. The judge's decision predated our decision in *Lumbermens Mut. Casualty Co.* v. *Belleville Indus.*, *supra* at 680-682, where we rejected the reasoning of *Shapiro*.

The pollution alleged in this case was not "sudden," as we defined that term in the *Lumbermens* case. The complaint details routine business activity lasting over several months in which the toxic contents of the barrels brought by SCA to the landfill were either emptied into open trenches or dumped into trenches and flattened with a bulldozer. To an ordinary intelligent person reading the complaint in the New York action, it is evident that the government asserts contamination of the site and the surrounding area and waters due to continuous waste disposal practices occurring over a protracted period of time as a concomitant part of a regular business activity. Such a situation is within the pollution exclusion because it is not "sudden and accidental."

In its effort to bring the underlying claim within the "sudden and accidental" provision, SCA relies on our statement that "the abruptness of the commencement of the release or discharge of the pollutant is the crucial element" in determining whether or not a discharge was sudden. *Lumbermens Mut. Casualty Co.* v. *Belleville Indus.*, *supra* at 681. SCA contends that the discharges were "sudden" within the meaning of that description, i.e., as the barrels were crushed or emptied, the commencement of the release from each barrel was abrupt. We reject this strained interpretation. As we stated elsewhere in the *Lumbermens* case, a discharge that "continues for an extended period . . . would likely cease to be accidental or sudden." *Id.* at 681 n.6. See also *Ray Indus., Inc.* v. *Liberty Mut. Ins. Co.*, 728 F. Supp. 1310, 1318 (E.D. Mich. 1989) (rejecting argument by insured that because "discrete releases occurred each time a barrel was smashed," the releases were therefore sudden). The only reasonable reading of the underlying complaint is, as we have stated, that the pollution of the landfill occurred gradually over several months of repeated activity and not as the result of a "sudden and accidental" discharge.[6] Because the "sud-

---

[6] As might be expected, there exists a considerable body of case law rejecting insurance coverage where the insured has regularly carried on operations involving continual pollution. See, e.g., *Northern Ins. Co.* v. *Aardvark Assoc.*, 942 F.2d 189, 191-194 (3d Cir. 1991); *Lumbermens Mut.*

den and accidental" exclusion is conjunctive, and both conditions must be met for the exception to be operative, see *Hazen Paper Co.* v. *United States Fidelity & Guar. Co., supra* at 692, and because the underlying complaint in this case cannot reasonably be read to allege a "sudden" discharge, SCA's claim for defense by its insurers must fail.

We also reject SCA's contention that the insurers have not shown that they are entitled to a grant of summary judgment. Drawing on language from *Sterilite Corp.* v. *Continental Casualty Co.*, 17 Mass. App. Ct. 316, 318-319 (1983), that the duty to defend is broader than the duty to indemnify, and that "the underlying complaint need only show . . . a possibility that the liability claim falls within the insurance coverage," SCA argues that the insurers' burden for summary judgment is an affirmative showing that there is no possibility that "[a]t least one claim against SCA may involve a 'sudden and accidental' discharge."

Under Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974), summary judgment "shall be rendered . . . [if] there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976). We examine the record in the light most favorable to SCA, see *Coveney* v. *Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983); however, it must be made to appear that there are genuine issues of material fact precluding the award of summary judgment. "[A]n adverse party may not rest upon the mere allegations or denials of his pleading, but his response . . . must set forth specific facts showing that

---

*Casualty Co.* v. *Belleville Indus.*, 938 F.2d 1423, 1430 (1st Cir. 1991), cert. denied, 112 S.Ct. 969 (1992); *A. Johnson & .Co., Inc.* v. *Aetna Casualty & Sur. Co.*, 933 F.2d 66, 72 (1st Cir. 1991); *Ogden Corp.* v. *Travelers Indem. Co.*, 924 F.2d 39, 41-42 (2d Cir. 1991); *FL Aerospace* v. *Aetna Casualty & Sur. Co.*, 897 F.2d 214, 219-220 (6th Cir.) (Michigan law), cert. denied, 111 S.Ct. 284 (1990); *United States Fidelity & Guar. Co.* v. *Star Fire Coals, Inc.*, 856 F.2d 31, 34-35 (6th Cir. 1988) (Kentucky law); *Technicon Elecs. Corp.* v. *American Home Assurance Co.*, 74 N.Y.2d 66, 75 (1989); *Waste Management of Carolinas, Inc.* v. *Peerless Ins. Co.*, 315 N.C. 688, 700 (1986).

there is a genuine issue for trial." Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974).

The summary judgment record in this case is well-developed, and the allegations in the underlying complaint in the New York action 'go beyond mere conclusory statements of negligence to assert specific and detailed events and practices that led to the contamination.[7] SCA has not pointed to anything which indicates that a reasonable reading of the complaint alleges a "sudden and accidental" discharge as we construed that term in the *Lumbermens* case.[8] SCA's opposition to the insurers' motion for summary judgment amounts essentially to speculation that, within the routine operations of the landfill, any single discharge may have occurred suddenly and accidentally. Such a theory, even if accepted as true, "cannot contradict a reasonable reading of the allegations that the entire pattern of conduct was not a 'sudden and accidental' occurrence." *A. Johnson & Co. v. Aetna Casualty & Sur. Co.*, 933 F.2d 66, 75 (1st Cir. 1991).

While an insurer may present an even stronger summary judgment record than was offered in this case by demonstrating, by way of the insured's answers to the underlying complaint, see *Technicon Elecs. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 72 (1989), or a consent decree into which the insured has entered, see *A. Johnson & Co. v. Aetna Casualty & Sur. Co.*, *supra* at 68, that the sudden and accidental exception is inapplicable, supplements of this kind are not required. The crucial question is whether, when considered in the light most favorable to SCA, the summary judgment record alleges "a liability arising on the face of the complaint and policy," *Sterilite Corp. v. Continental Casu-*

---

[7]Compare *Hazen Paper Co. v. United States Fidelity & Guar. Co.*, *supra* at 692-693 (a notification to the insured from the Environmental Protection Agency stating that "actual releases of hazardous substances . . . are occurring" was insufficient to determine, for summary judgment purposes, whether the releases were sudden and accidental).

[8]Compare *Grant-Southern Iron & Metal Co. v. CNA Ins. Co.*, 905 F.2d 954, 958 (6th Cir. 1990) (summary judgment in favor of insurer was reversed where the record included material supporting a theory that the pollution was sudden and accidental).

*alty Co., supra* at 324. We conclude that the record in this case does not, and therefore, the insurers are entitled to summary judgment in their favor.

Finally, we reject SCA's argument that it is entitled to recover its defense costs from Liberty Mutual for the period through June 14, 1990 (the date of our decision in *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., supra*), on a theory that, under *Shapiro* v. *Public Serv. Mut. Ins. Co.,* 19 Mass. App. Ct. 648 (1985), the controlling law prior to our decision in *Lumbermens,* Liberty Mutual was in breach of its duty to defend. SCA has cited no relevant authority for this theory; moreover, *Shapiro* does not compel a conclusion that the pollution alleged in this case was "sudden and accidental."

We conclude that Liberty Mutual, Hartford, and Transportation[9] are entitled to summary judgment on the basis that SCA's activities fall within the pollution exclusion of these policies. This conclusion is dispositive on the issue of the duty of the insurers to defend SCA in the pending New York action, and renders it unnecessary to consider the other arguments of the parties on issues apart from the applicability of the exclusion.

The order allowing SCA's motions for summary judgment is reversed. A new order is to enter granting summary judgment for Liberty Mutual, Hartford, and Transportation on the basis that these insurers do not have a duty to defend SCA in the pending action brought by the State of New York and the town of Tusten, New York, in the United States District Court for the Southern District of New York.

*So ordered.*

---

[9]Liberty Mutual and Hartford filed motions for summary judgment in their favor. Although Transportation did not move for summary judgment, it may obtain summary judgment pursuant to the provisions of Mass. R. Civ. P. 56 (c).