LANDAUER, INC. *vs.* LIBERTY MUTUAL INSURANCE CO.

No. 92-P-1175.

Suffolk. October 20, 1993. - March 2, 1994.

Present: ARMSTRONG, KAPLAN, & LAURENCE, JJ.

*Insurance*, Comprehensive liability insurance, Pollution exclusion clause, Defense of proceedings against insured, Coverage. *Contract*, Insurance. *Hazardous Materials. Words*, "Sudden and accidental."

An insurer was not obliged to defend its insured against claims arising from contamination of soil and water near a landfill where the claims fell within the pollution exclusion clauses of the relevant policies and the "sudden and accidental" exception to the exclusion was not, in the circumstances, applicable. [180-182]

CIVIL ACTION commenced in the Superior Court Department on August 28, 1991.

The case was heard by *Elbert Tuttle*, J., on a motion for summary judgment.

*Arthur P. Kreiger* for the plaintiff.

*Victoria S. Price* for the defendant.

*Laura A. Foggan, Marilyn E. Kerst & Dale E. Hausman*, of the District of Columbia, *& Michael R. Coppock*, for Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

KAPLAN, J. The plaintiff, Landauer, Inc. (Landauer), sought a declaration that its comprehensive general liability policies with the defendant, Liberty Mutual Insurance Co. (Liberty Mutual), required Liberty Mutual to take over the defense of a claim[1] against it related to landfill pollution. In dealing with this matter we have to revisit the question of the

---

[1] As will be seen, six parties brought claims by way of impleader against Landauer, but as they all relate to the same matter we refer to the claims collectively as a "claim."

meaning or scope of a "sudden and accidental" exception to the pollution exclusion clause of the policies. The trial judge in an analytic opinion concluded that Liberty Mutual was not under a duty to defend. We agree, following the precept of *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc.*, 412 Mass. 330 (1992).

1. In 1985, the United States and the Commonwealth filed suits (later consolidated) in the United States District Court for Massachusetts[2] against a number of individuals and companies seeking to charge them with liability for the costs of cleaning up the contamination of soil and water near the Charles George Landfill in Tyngsborough and Dunstable. Landauer was not named in those suits.

About February, 1990, six of the named defendants served third-party complaints (impleaders) on Landauer[3] alleging, in effect, that as Landauer was in a similar position with them in respect to the landfill, Landauer should be held liable to them on principles of contribution or indemnification if they were held liable to the government plaintiffs.

Landauer by letter of February 21, 1990, notified Liberty Mutual of the claim and asked to be provided with defense. Reserving its rights, Liberty Mutual in March, 1990, undertook to defend. But on February 8, 1991, upon further consideration, it wrote Landauer that it was withdrawing as of March 10, 1991, assigning as the principal reason that the claim against Landauer fell within the pollution exclusion of the policies (and was not reinstated by the "sudden and accidental" exception thereto).[4]

---

[2]United States *vs.* Charles George Trucking Co., Civ. 85-2463-WD; Massachusetts *vs.* Charles George Trucking Co., Civ. 85-2714-WD.

[3]Tech/Ops, Inc., was the target of the impleaders and the insured in the relevant policies. That corporation, now dissolved, was succeeded by Landauer for purposes of the present litigation, and we use that name throughout.

[4]Landauer had policies issued by Liberty Mutual from 1969 to 1982. We are concerned with policies containing the pollution exclusion provision. There was no such policy exclusion for the period 1969-1970. The judge found that the government complaints could not be read to allege that there were hazardous waste activities during that interval. We agree.

Landauer commenced the present action for a declaration on August 28, 1991.[5] On January 17, 1992, Landauer moved for partial summary judgment. On April 21, 1992, after hearing, a judge of the Superior Court denied Landauer's motion and, under Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974), allowed summary judgment against the moving party.[6] Judgment entered for Liberty Mutual on July 16, 1992, and Landauer has appealed.

2. The impleader complaints by the six defendants naturally carried over and replicated the substance of the government complaints.

The pleading by the United States set out claims under CERCLA, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601-9657 (1982) (The Act), and under additional statutory and common law theories. The Charles George Landfill was described as consisting of sixty-nine acres in an essentially rural area. It was surrounded by densely vegetated woodland, interlaced with brooks, marshes, and ponds. Between at least 1973 and 1976 hazardous substances, as defined in the Act,[7] were disposed of at the site. Over the course of time, these substances have leaked toward and into the soil and the groundwater beneath the site and have emanated from the site via groundwater migration and surface water drainage. Such migration is comprehended by the term "release" in the Act.[8] The government was authorized by the statute[9] to undertake "response" actions to deal with the contamination, and by June, 1985, the United States had spent

---

[5]Besides the request for the declaration, Landauer alleged breach of contract and liability under G. L. cc. 93A and 176D, but, with Liberty Mutual deserving to succeed on the declaration, the other demands failed.

[6]The material before the judge comprised principally insurance policies, government and impleader complaints, and correspondence between Landauer and Liberty Mutual regarding coverage.

[7]Section 101(14) of the Act, 42 U.S.C. § 9601(14) (1982).

[8]Section 101(22) of the Act, 42 U.S.C. § 9601(22) (1982) defines "release" as "any spilling, leaking, pumping, pouring, emiting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ."

[9]Section 104(a) of the Act, 42 U.S.C. § 9604(a) (1982).

about $1.7 million in that behalf, with additional expenditures in the offing. The United States is entitled to recover such costs from (among others) "any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity" at a "facility,"[10] meaning here the hazardous-substance Charles George dump. The complaint charged numerous corporations as "generator" defendants. These companies generated hazardous wastes and fell into the category just quoted of persons who "by contract," etc., arranged for the disposal, or the transport for disposal, of the wastes at the facility.

Six of these generator defendants impleaded Landauer on the basis, as noted, that it was provisionally liable to them.

The Commonwealth's complaint was similar to that of the United States. It asserted claims under CERCLA (and under State statutes and common law theories). The clean-up costs incurred by the Commonwealth to May, 1985, were about $65,000.

3. When Landauer, facing impleader, applied to Liberty Mutual, it was met with the pollution provision of the policies: "This policy does not apply: . . . (f) to . . . property damage arising out of the discharge, dispersal, release or escape of . . . fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."[11]

---

[10]Sections 107(a)(3) and 101(a) of the Act, 42 U.S.C. §§ 9607(a)(3), 9601(9) (1982).

[11]For purposes of the present case, we need not get into any question of the meaning of "occurrence" or "property damage" appearing in the policies. As to the latter term, see *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 697-701 (1990).

Matching the allegations of the pleadings with the policy terms, especially "sudden and accidental," was Liberty Mutual obliged to defend?[12]

The *SCA* decision, laying pleadings similar to the pleadings herein by the side of similar policy provisions in a comparable environmental setting, declared — it was upon cross motions for summary judgment — that the answer to the question was No. "[W]e held [in *Lumbermens Mut. Cas. Co.* v. *Belleville Indus., Inc.,* 407 Mass. 675, 680-681 & n.4 (1990)] that the word 'sudden' has a temporal element, and that 'only an abrupt discharge or release of pollutants falls within the exception.' " 412 Mass. at 335. "To an ordinary intelligent person reading the complaint in the [Federal] action, it is evident that the government asserts contamination of the site and the surrounding area and waters due to continuous waste disposal practices occurring over a protracted period of time as a concomitant part of a regular business activity. Such a situation is within the pollution exclusion because it is not 'sudden and accidental.' " *Id.* at 336. The court responded to a contention by SCA — like a contention Landauer has made in the present case — that "the insurers' burden for summary judgment is an affirmative showing that there is no possibility that '[a]t least one claim against SCA may involve a "sudden and accidental" discharge.' " *Id.* at 337. The court said summary judgment could not be thus averted. SCA was tendering what "amounts essentially to speculation that, within the routine operations of the landfill, any single discharge may have occurred suddenly and accidentally. Such a theory, even if accepted as true, 'cannot contradict a reasonable reading of the allegations that the entire pattern of conduct was not a "sudden and accidental"

---

[12] " '[T]he question of the initial duty of a liability insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are "reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense.' " *Continental Cas. Co.* v. *Gilbane Bldg. Co.,* 391 Mass. 143, 146 (1984), quoting from *Sterilite Corp* v. *Continental Cas. Co.,* 17 Mass. App. Ct. 316, 318 (1983).

occurrence.' " *Id.* at 338, quoting from *A. Johnson & Co.* v. *Aetna Cas. & Sur. Co.*, 933 F.2d 66, 75 (1st Cir. 1991).

The view of the critical policy terms taken here was first espoused in the *Lumbermens* case, 407 Mass. at 677-678, and carried forward in *Hazen Paper Co.* v. *United States Fid. & Guar. Co.*, 407 Mass. 689, 692 (1990), the *SCA* case, 412 Mass. at 335, *Goodman* v. *Aetna Cas. & Sur. Co.*, 412 Mass. 807 (1992), and *Polaroid Corp.* v. *Travelers Indem. Co.*, 414 Mass. 747, 751 (1993). See also *Lumbermens Mut. Cas. Co.* v. *Belleville Indus., Inc.*, 938 F.2d 1423, 1425 (1st Cir. 1991), cert. denied, 502 U.S. 1073 (1992). That this view was adopted after examination of competing views around the country is some guarantee of its soundness.[13]

*Judgment affirmed.*

---

[13]*CPC Intl., Inc.* v. *Northbrook Excess & Surplus Ins. Co.*, 962 F.2d 77, 91-95 (1st Cir. 1992), refers to the contrariety of views. It may be that general opinion is gravitating toward the position in this Commonwealth that the expression "sudden and accidental" in policies like the present is unambiguous and looks to the temporal feature, as found in our *Lumbermens* case, see the comments at 407 Mass. at 680-681.