Doerfer, J-.
Plaintiff, Highlands Insurance Company (“Highlands”) brought this action seeking a declaration that Highlands has no duty to indemnify defendant Aerovox Incorporated (“Aerovox”) for monies paid in pollution response costs to the Environmental Protection Agency (“EPA”). Highlands moved for summary judgment on April 20, 1993. On October 8, 1993, this court issued a Memorandum of Decision and Order (Attached as “Exhibit A”*). The court deferred its ruling on the Motion for Summary Judgment for 90 days in order to allow Aerovox sufficient time to submit further affidavits. On December 7, 1993, Highlands moved for partial reconsideration of the court’s October 8, 1993 Order. On January 6, 1994, Aerovox submitted additional affidavits, purporting to establish a causal link between an October 16, 1958 fire and the pollution and resulting property damage for which liability was imposed on Aerovox. On February 28, 1994, this court issued a Memorandum of Decision and Order denying Highlands’ Motion for Partial Reconsideration. [2 Mass. L. Rfir. 257 (1994).] On April 27, Highlands moved for reconsideration of the February 28, 1994 Order. For the reasons set forth below, the February 28, 1994 Order is vacated and the plaintiffs April 20, 1993 Motion for Summary Judgment is granted.
BACKGROUND
Aerovox, a manufacturer of electrical capacitors at a plant located in New Bedford, entered into a contract of liability insurance with Highlands that provided excess coverage for the period of March 1, 1980 through March 1, 1981. The Re-Solve, Inc. Site (“Site”), a former waste reclamation facility, is located in North Dartmouth, Massachusetts. Re-Solve operated the site for 24 years, from 1956 to 1980. In May of 1983, the EPA identified Aerovox as a generator of wastes, alleging that Aerovox had, over a period of years, contributed waste to the Site. The EPA declared that the contamination occurred as a result of operations including the disposal of wastes in on-site lagoons where the contents were periodically burned; the disposal of oil waste; and the discharge of water from the distillation tower. On May 31, 1989, Aerovox entered *210 into a Consent Decree and agreed to pay 2.368% of the response costs.[1] Aerovox, through this suit, has sought indemnification from Highlands for the sums Aerovox has paid or will pay to the EPA. Highlands asserts that it has no duty to indemnify Aerovox because the policy excludes coverage for pollution and the acts in question do not fall within the “sudden and accidental” exception to the pollution exclusion clause.[2] Aerovox contends that at least some of the pollution-causing events were “sudden and accidental” and, therefore, Highlands should bear partial or full liability.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial, may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805 (1991), accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
This court’s October 8, 1993 Order invited Aerovox “to submit evidence by way of supplemental affidavits within 90 days on the fire and its causal relationship to the pollution with which Aerovox has been charged.” (Order of 10/8/93, p. 4.) In response, Aerovox submitted the affidavit of David Herer (“Herer”),[3] the vice president and project director of Metcalf & Eddy’s Industrial/Hazardous Waste division and its project manager for the groundwater remediation testing and design work at the Re-Solve Site. Herer opined in his affidavit that:
The October 16, 1958 chemical fire and explosion released a significant volume of solvents and other substances which in turn caused groundwater and soil contamination and therefore property damage at the [Re-Solve] Site . . . [B]ecause of the persistence and migration of the solvents and contaminants released by the fire, especially the substances known as dense non-aqueous phased liquids (“DNAPLs”) . . . , the release of solvents and contaminants during the 1958 fire continued to cause ongoing property damage at the Site during the 1970s and 1980s . . .
(Affidavit of David Herer, ¶¶1-4, 7, 28.) In its February 28, 1994 order, this court stated that Herer’s expert opinion tended “to show a causal link between a ‘sudden and accidental’ occurrence and current liability.” (Order of 2/28/94, p. 9.) Thus, this court denied Highlands’ Motion for Reconsideration of its Motion for Summary Judgment, finding that issues of material fact existed as to whether Highlands had a duty to indemnify Aerovox for any “sudden and accidental” occurrences. Upon careful review of Aerovox’s supplemental affidavits and the recently developed body of law in the area of pollution liability, the court finds that its February 28, 1994 Order was erroneous and must be vacated. The court has reviewed the problem of the reasonable understanding of the parties to a contract of insurance where the insured is in a “pollution-prone” industry. As applied to the facts of this case, the reasoning of the First Circuit in Lumbermens Mutual Casualty Co. v. Belleville Indus., Inc., 938 F.2d 1423 (1st Cir. 1991), is persuasive and leads the court to rule that coverage for indemnity is not available. Other arguments of the parties relating to coverage are also discussed herein.
I.
Aerovox’s claim of coverage is based on the alleged “sudden and accidental” 1958 fire and its causal connection to continuing property damage to the Site through the 1970s and 1980s. Highlands asserts that an isolated “sudden and accidental” discharge is insufficient to establish Highland’s liability in the face of a pattern of polluting. Highlands relies on Lumbermens Mutual Casualty Co. v. Belleville Indus., Inc., 938 F.2d 1423 (1st Cir. 1991), cert, denied, 112 S.Ct. 969 (1992), for its proposition.
In Lumbermens, the United States Court of Appeals for the First Circuit held that the “sudden and accidental” limitation on the pollution exclusion clause was inapplicable to a “pollution-prone operation” such as the operation of a hazardous waste handling facility. See also Aetna Casualty & Surety Co. v. George, Nos. 86-1625, 88-2814,91-1070,2 Mass. L. Rptr. 177 (Mass.Super.Ct., 1994). While the Supreme Judicial Court did not employ the “pollution-prone” analysis of the First Circuit in Liberty Mutual Insurance Company v. SCA Inc., 412 Mass. 330 (1992), which concerned an insurer’s duty to defend a pollution claim, it did cite the First Circuit’s decision with apparent approval. SCA, Inc., supra at 336, n. 6. This court was not prepared to adopt the entire logic of the Lumbermens decision in its February 28, 1994 Order. However, upon reflection, the court finds the First Circuit’s analysis compelling.
In Lumbermens, Belleville[4] alleged that a fire and a rainstorm caused at least some of the pollution for which the plaintiff in the underlying action sought recovery. In rejecting Belleville’s contention, the court explained,
It is . . . the nature of an insured’s enterprises and its historical operations that determine the applicability of the policy provision. Belleville discharged *211 pollutants as an ordinary part of its business operations; we simply cannot analyze these provisions as if it were a manufacturer of health foods that rarely, if ever, experienced a pollution-producing event.
Lumbermens, supra at 1430. The First Circuit rejected the federal district court’s “microanalysis” of each pollution-causing event to determine whether one could be characterized “sudden and accidental” within the terms of the policy. Rather, the court held that the “ ‘sudden and accidental’ exception should not be construed to provide coverage... when the discharges consisted of long accumulated, unattended, and unsegregated pollutants, and were caused by events not clearly beyond the long-range reasonable expectations of the insured.” Id. at 1427.
The First Circuit’s analysis is well-reasoned. A microanalysis of each occurrence which may have contributed to the overall pollution of an industry is unrealistic and not reasonably contemplated by the parties. In a “pollution-prone” industry, the overwhelming contribution to the damage is not the result of occasional “sudden and accidental” events, but rather the result of daily operations. Aerovox admits that “the catastrophic 1958 fire” is not “the only occurrence for which it has been held legally liable.” (Aerovox’s Opposition, April 22, 1994, p. 8.) Rather, the EPA held Aerovox liable, inter alia, for Belleville’s conduct in sending barrels of hazardous waste to the Site for reclamation over a period of years. (Aerovox’s Opposition, April 25, 1994, p.9.)
Aerovox’s sole claim of coverage under the Highlands policy is therefore based on the 1958 fire. From the submissions presented,[5] it is clear that the 1958 fire, even if it did result in some contamination, cannot have contributed more than a de minimus amount to Aerovox’s total liability as determined by the EPA.[6] Requiring Highlands to indemnify Aerovox for Aerovox’s entire response costs is unreasonable under the circumstances and several federal district courts and state intermediate appellate courts, when confronted with similar factual scenarios, have so held. In Industrial Indem. Ins. Co. v. Crown Auto Dealerships, Inc., 731 F.Supp. 1517 (M.D. Fla. 1990), a recycler of used crankcase oil stored waste oil sludge in unlined storage ponds. The insured claimed coverage because the ponds had experienced “sudden and accidental” spills and leaks. The court rejected the insured’s claims and characterized the events as “clearly cumulative” to the normal operations of the industry. Id. at 1521; see also Outboard Marine Corp. v. Liberty Mutual Ins. Co., 212 Ill.App.3d 231 (Ill.App.Ct, 2dDist. 1991) (insured’s evidence of rainstorm, flood, and fire not enough to establish exception to the pollution exclusion clause); Fireman’s Fund Ins. Co’s v. Ex-Cell-O Corp., 750 F.Supp. 1340 (E.D. Mich. 1990) (insured’s evidence of tank spill and pipe rupture not enough to invoke coverage); Ray Industries, Inc. v. Liberty Mutual Ins. Co., 728 F.Supp. 1310 (E.D. Mich. 1989) (the puncturing of a drum of waste held to be part of normal operations).
In Aetna Casualty & Surety Co. v. George, Nos. 86-1625, 88-2184, 91-1070, 2 Mass. L. Rptr. 177 (Mass.Super. Ct., 1994), the court rejected the “perhaps-there-is-a-covered-claim-lurking” argument when the “extended pattern of . . . activity created a continuous polluting event or, at the least, a series of interconnected polluting events.” (Slip op. at 8, 12.) The mere occurrence of one extraordinary event which minimally augments an industry’s “standard” pollution does not trigger an insurance company’s duty to indemnify an insured for each and every trace of pollution which that industry has caused during its daily operations. Furthermore, as the First Circuit states in Lumbermens, it is “illogical to believe that insurers intended through the ‘sudden and accidental’ exception to buy into a risk and/or litigation package of this nature.” Lumbermens, supra at 1428. Therefore, apart from the practical problems of proof caused by a microanalysis approach to liability, such an approach runs contrary to the reasonable expectations of the parties in entering into a contractual relationship.
Aerovox argues that it falls within the exception noted by the First Circuit in Lumbermens. The First Circuit stated that “a court might properly identify a sudden and accidental release so beyond the pale of expectability as to be considered ‘accidental.’ ” Lumbermens, supra at 1427. Thus, the court left open the possibility that a “sudden and accidental” event might be so significant as to make it worthwhile to analyze the particular contribution of that event to the overall damage. There is no basis in the record to classify the 1958 fire as such an event.[7] Aerovox has failed to allege any facts which show a discrete area of damage based on the fire or that particular effects of the fire could be isolated as a matter of proof. Thus, the court rejects Aerovox’s contention that a pollution-causing event such as a fire is a “marked departure from normal operations.” Id. at 1428.
Other Superior Court justices have similarly held that the duty to indemnify does not arise from the allegations of a single “sudden and accidental” fire when the industry is “pollution-prone.” See Polaroid Corp. v. The Travelers Indemnity Co., No. 88-5208 (Mass.Super.Ct., Middlesex Cty., September 22, 1992); General Chemical Corp. v. First State Insurance Co., No. 90-5855 (Mass.Super.Ct., Suffolk Cty., September 18, 1992). In General Chemical, the court examined the identical 1958 fire now in question and held that the fire was not enough to trigger the insurer’s duty to defend or to indemnify. General Chemical, supra at 7-9. Thus, after a thorough review of the recently developed body of law in the area of pollution liability, as well as the policies on which the law is based, the court holds that Aerovox’s affidavit *212 that a 1958 fire caused some undifferentiated, continuing property damage during the policy period is not sufficient to defeat Highland’s motion for summary judgment.
Aerovox’s final argument for indemnification is that, because its own operations have not involved polluting activity, Aerovox may not be properly characterized as a “pollution-prone” industry under the Lumbermens analysis. Aerovox’s contention is erroneous because Aerovox is liable as the current operator of the New Bedford facility.[8] The fact that Aerovox’s predecessor, Belleville, was the entity actually involved in the ongoing pollution activities is legally irrelevant. The EPA charged Aerovox, inter alia, with Belleville’s conduct in sending barrels of hazardous waste to the Site for reclamation over a period of years. (Aerovox’s Opposition, 4/25/94, p. 9.) The Lumbermens’ “pollution-prone” analysis properly applies to the entity currently seeking indemnification, even if it was their predecessor which actually contributed to the damage.
II.
In its memorandum, Highlands relies on Liberty Mutual Insurance Company v. SCA Services, Inc., 412 Mass. 330 (1992), and Landauer, Inc. v. Liberty Mutual Insurance Company, 36 Mass.App.Ct. 177 (1994). The court finds SCA and Landauer inapposite to the present case because both are “duty-to-defend” cases.[9] The previously discussed analysis is independent of the analysis applicable to “duty-to-defend” disputes. When the complaint alleges that the sovereign is suing to require clean-up of pollution resulting from a history of operations, isolated contributions of “sudden and accidental” events does not require an insurance company to defend because the gravamen of the complaint is non-"sudden and accidental." An insurer’s duty to indemnify, however, depends on the true facts, as distinguished from the allegations of a third-party complaint. SCA, supra at 335, n. 4 (citations omitted).
III.
Highlands further contends that the “existence or nonexistence of the alleged fire is irrelevant” to Aerovox’s claim because neither Aerovox nor its corporate predecessor were in existence at the time of the 1958 fire. Highlands asserts that it can not be required to provide insurance for the activities of non-policyholders who used the Re-solve site in the 1950s.
Highlands’ contention is questionable in light of Trustees of Tufts University v. Commercial Union Ins. Co., 415 Mass. 844 (1993). In Tufts, the Supreme Judicial Court interpreted a similar policy to the instant case and held that an “ ‘occurrence’ is the ‘injurious exposure’ to the hazardous material during the policy periods.” The Court further held that “ ‘property damage’ is the continued contamination of soil and groundwater on the Site during the policy periods caused by the release of the hazardous material.” Id. at 848 citing Hazen Paper Co. v. United States Fidelity and Guar. Co., 407 Mass. 689, 698 (1990). Aerovox’s expert, David Herer, opined in his affidavit that the 1958 fire “continued to cause ongoing property damage at the Site during the 1970s and 1980s . ..” Thus, pursuant to the Tufts decision, Highlands would have a duty to indemnify Aerovox for the continuing property damage at the Site during 1980 to 1981 (the policy period), even though the actual catalyst of the damage occurred in 1958. Therefore, the court does not grant summary judgment for Highlands on the basis that the fire occurred prior to Aerovox’s existence,[10] but rather on the substantive grounds previously discussed.
ORDER
For the foregoing reasons, it is hereby ORDERED that the court’s Order, dated February 28, 1994, be VACATED. The Plaintiff Highland Insurance Company’s Motion for Summary Judgment is GRANTED. It is hereby ORDERED and DECLARED that Highlands Insurance Company has no duiy to indemnify defendant Aerovox Incorporated for claims arising out of the alleged occurrences at the Re-Solve site.

Editor’s Note: The opinion referred to is reproduced immediately following this opinion.

Aerovox’s share of the Re-Solve Site clean-up costs and related costs will equal or exceed $1,400,000.00.

The pollution clause provides,
The policy shall not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of (1) smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land... but this exclusion does not apply if such discharge, dispersal release or escape is sudden and accidental
(Emphasis added.)

While Aerovox submitted further affidavits, Aerovox primarily relies on the expert affidavit of David Herer.

Belleville is Aerovox’s predecessor in the instant case.

Herer, in his affidavit, states that “the rupture of damage to the many drums stored in the nearby areas caused the release of a Significant volume of solvents and other potential pollutants, which in turn caused soil and groundwater contamination and consequently, property damage.” (Emphasis added.) (Affidavit of David Herer, p. 6.) Herer does not attempt to quantify the amount of the fire’s contribution to the damage in relation to the damage caused by the daily operations at the Site.

In its ROD Decision Summary, the EPA states,
Historically, the operators disposed of the hazardous byproducts from the distillation process in two ways. The residues from the distillation tower, liquid sludge waste and impure solvents were disposed of in four unlined lagoons on-site. The lagoon contents were burned periodically to reduce the volatile organic content. An oil waste that accumulated at the bottom of the degreaser distillation still was disposed of on one portion of the site through a method known as landfarming. This oil waste was also spread throughout the site to control dust. Cooling water from the distillation tower was discharged to a shallow on-site lagoon in the eastern portion of the site. It is alleged *213 that residues from burned tires were also disposed of in the lagoons.
(Exhibit D to Affidavit of Barbara O’Donnell, p. 3.)

Lumbermens held that a 1975 fire, which broke out in a ventilator shaft, was not “beyond the pale of expectability.” Aerovox’s argument that the 1958 chemical fire was “beyond the pale of expectability” is not supported by the case law or the record.

In a letter to Aerovox, the EPA explained the scope of the potentially responsible parties.
Potentially liable responsible parties include the current owner or operator of the site, past owners or operators, transporters or hazardous substances to the site, and “any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, or hazardous substances .. .” at the site. (CERCLA §107(a)(3), 42 U.S.C. §9607(a)(3).)

Aerovox entered into a Consent Decree with the EPA and agreed to pay 2.368% of the response costs incurred by the EPA in connection with the Re-Solve Site. Thus, Aerovox is solely seeking indemnification.

Highlands brings General Chemical Carp. v. First State Ins. Co., No. 90-5855 (Mass. Super. Ct. Suffolk Ciy., September 18, 1992), to the attention of the court. General Chemical dealt with the same Site and the same fire presently at issue. The court held that “the fire occurred years before plaintiffs use of the Re-Solve facility began, and thus cannot be a basis of defendant’s liability.” General Chemical was decided prior to the Tufts case, however, which clearly changed the law in this area.