ISODORE GOODMAN & another[1] vs. AETNA CASUALTY & SURETY COMPANY & another[2].

Berkshire. January 9, 1992. - June 10, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, General liability insurance, Pollution exclusion clause, Defense of proceedings against insured, Coverage, Construction of policy. *Contract*, Insurance, Construction of contract. *Hazardous Materials. Practice, Civil*, Summary judgment. *Words*, "Sudden and accidental."

In an action by insureds seeking a declaration that their general liability insurers were obliged to indemnify them with respect to a claim arising from alleged environmental pollution resulting from the leak of gasoline from an underground tank on the plaintiffs' property, the record revealed disputed issues of material fact with respect to whether the discharge was "sudden," thus precluding summary judgment as to the applicability of the insurance policies' pollution exclusion clauses. [811-813]

CIVIL ACTION commenced in the Superior Court Department on February 9, 1988.

The case was heard by *Lawrence B. Urbano*, J., on motions for partial summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas M. Reiter* of Pennsylvania (*Thomas L. Crotty, Jr.*, with him) for the plaintiffs.

*Diane M. DeGiacomo* (*Ronald E. Oliveira* with her) for Aetna Casualty & Surety Company.

---

[1]Isodo Real Estate Management Co., Inc., as general partner of CIM Limited Partnership.

[2]Vermont Mutual Insurance Company. We acknowledge the brief, amicus curiae, filed by the Insurance Environmental Litigation Association.

*Michael F. Aylward* (*Laurie J. Condos* with him) for Vermont Mutual Insurance Company.

*Thomas W. Brunner, James M. Johnstone & Jo Anne B. Hennigan* of the District of Columbia, & *Peter G. Hermes & Molly H. Sherden,* for Insurance Environmental Litigation Association, amicus curiae, submitted a brief.

GREANEY, J. The plaintiffs, Isodore Goodman and Isodo Real Estate Management Co., Inc., owners of a parcel of land in the town of Great Barrington, brought this action in the Superior Court against their general liability insurers, Aetna Casualty & Surety Company and Vermont Mutual Insurance Company. The plaintiffs sought a declaration under G. L. c. 231A (1990 ed.), that Aetna and Vermont Mutual were required to indemnify them in a suit brought by a neighboring property owner for damages resulting from the leak of gasoline from an underground tank on the plaintiffs' property; they also sought damages for breach of contract arising out of the insurers' reservation of their rights in the underlying suit.[3] On cross motions for partial summary judgment, a judge in the Superior Court ruled that the insurers were under no duty to indemnify the plaintiffs in the underlying action, and ordered the entry of a partial final judgment in the defendants' favor pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974).[4] We transferred the case to this court on our own motion. We reverse the judgment.

The plaintiffs' property, located at 343-349 Main Street in Great Barrington, was at all relevant times leased to one William T. Whittaker, who managed various commercial in-

---

[3]The plaintiffs also asserted causes of action against Aetna and Vermont Mutual based on negligence, negligent misrepresentation and violations of G. L. c. 93A and c. 176D. Those claims, and a claim brought by the plaintiffs against their insurance agency, Wheeler & Taylor, Inc., are not before us.

[4]Aetna filed a cross motion for summary judgment on both the declaratory relief and breach of contract claims, and the judge allowed summary judgment on both counts. Vermont Mutual did not file a cross motion for summary judgment, but a judgment on the declaratory relief claim only was entered in its favor pursuant to Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974).

terests there, including a large volume gasoline service station selling BP (British Petroleum) gasoline. As part of the lease agreement, Whittaker maintained property insurance and general liability insurance on the premises through the defendants, Aetna and Vermont Mutual.

In April, 1986, the land abutting the plaintiffs' property to the south, which contained a private school, the John Dewey Academy, was found to be contaminated with gasoline. The direction of the groundwater flow indicated that the pollution was coming from the gasoline service station on the plaintiffs' premises. The Department of Environmental Quality Engineering (DEQE) sent a "Notice of Responsibility" to Goodman, identifying his property as the source of a leaking gasoline storage tank, and informing him that, under G. L. c. 21E, § 5 (1990 ed.), he might be responsible for the resulting pollution. In response to the DEQE notice, Goodman retained an environmental consulting firm to take corrective measures. As part of its effort, the consulting firm removed four underground gasoline storage tanks from the property; one of the tanks, when excavated, was observed to have a hole near one end from which gasoline was flowing. The consulting firm also installed equipment to arrest the migration of the discharged gasoline onto the neighbor's property. This remedial effort, however, was only partly successful, and some gasoline continued to spread beneath the surface of the nearby land.

In October, 1987, the owner of the school property brought a suit against the plaintiffs for damages resulting from the gasoline contamination. Aetna and Vermont Mutual agreed to defend the plaintiffs in the litigation, but both insurers reserved their rights later to deny coverage for any judgment entered in that action. This suit for declaratory relief followed.

In awarding summary judgment in favor of the insurers, the judge, relying on *Lumbermens Mut. Casualty Co.* v. *Belleville Indus., Inc.*, 407 Mass. 675 (1990), ruled that the pollution exclusion clauses contained in the insurance policies issued by Aetna and Vermont Mutual relieved the insurers of

liability as a matter of law. These policies, like the policies at issue in the *Lumbermens* case, *supra* at 677-678, and in *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc., ante* 330, 334 (1992), contain a pollution exclusion clause, which reads as follows: "This insurance does not apply . . . [to] property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chèmicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."[5] Under the terms of these policies, the insurers are required to provide indemnification only if the discharge of pollutants is both "sudden" and "accidental." *Id.* at 334-335.

The parties agreed that the defective storage tank had been leaking for eighteen months prior to its removal in June, 1986. The plaintiffs' expert witness, a senior hydrologist at the firm hired to clean up the site, made this determination based on the size of the hole in the defective tank and the rate of migration of the gasoline. In his affidavit, the hydrologist described the hole as "large sized," and stated that "gasoline was observed to be actively discharging from [the] hole at an estimated flow rate of approximately 0.2 gallons per minute." He also indicated that, based on his study, "petroleum from the release has migrated, and continues to migrate, at a rate of approximately 0.3 feet per day." From these facts, essentially agreed upon by the parties for purposes of the summary judgment motions, the judge reasoned that the release of gasoline was too lengthy to have been "sudden," and, therefore, the discharge did not fall within the "sudden and accidental" exception to the pollution exclusion clause. Consequently, the judge allowed summary judg-

---

[5]The wording of the Aetna policy is slightly different from the wording of the Vermont Mutual policy quoted above, but the discrepancy is of no significance.

ment in the insurers' favor. For the reasons discussed below, this decision was error.

In *Lumbermens Mut. Casualty Co.* v. *Belleville Indus.*, *supra*, we considered the meaning of the term "sudden." We stated in that decision that "sudden" has "a temporal aspect to its meaning, and not just the sense of something unexpected," and that "the abruptness of the commencement of the release or discharge of the pollutant is *the crucial element* in determining whether an event qualifies as 'sudden' " (emphasis supplied). *Id*. at 680-681. We also indicated that "[t]he sudden event to which the exception to the pollution exclusion clause applies concerns neither the cause of the release of a pollutant nor the damage caused by the release. It is the release of pollutants itself that must have occurred suddenly, if the exception is to apply so as to provide coverage." *Id*. at 679.[6] While the cause of the release does not determine whether the exception to the pollution exclusion clause is applicable, it may well be informative in deciding whether the release was abrupt. For example, a sudden cause (like a pile driven into a gasoline tank), or the sudden development of a condition (like a ground shift that ruptures piping) might guide the decision whether a given release of pollutants was due to a momentary event, and therefore, was abrupt.

In keeping with the judge's ruling, the parties on appeal have focused their attention on the issue whether the discharge in this case was "sudden" within the meaning of the language in the insurance policies. That question becomes one of law once the material facts are determined. *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 526 (1991). Summary judgment, however, is not appropriate, and the question of law cannot be resolved, if the record fails to demonstrate that there is no dispute of material fact. *Hazen Paper Co.* v.

---

[6]In the *Lumbermens* decision, we answered questions certified by a judge of the United States District Court for the District of Massachusetts. The record in the case did not contain a presentation of facts on which the certified questions as to the meaning of the term "sudden" were based.

*United States Fidelity & Guar. Co.*, 407 Mass. 689, 692 (1990). *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985).

We conclude that the record in this case does not permit an informed resolution whether the leak in question was abrupt, and therefore, does not establish enough facts to warrant decision of the "suddenness" issue. Compare *Liberty Mut. Ins. Co.* v. *SCA Servs., Inc., supra* at 338. The affidavit of the plaintiffs' expert, the principal information on the point, gives his opinion of the size of the hole and the migration rate of the gasoline. The affidavit then goes on to state the following:

> "Based upon my personal observation and review of the facts attendant in this matter, coupled with my experience in more than 30 sites involving leaking underground fuel storage tanks, it is my opinion that the contamination occurring at the site was not the result of a gradual leak of gasoline from Tank No. 2 over an indeterminate period of time. Rather, in my opinion there was an abrupt discharge or release of gasoline into the immediately surrounding soils and groundwater from the hole in Tank No. 2 which rapidly spread and migrated onto the School Property. It is my opinion that this discharge commenced within a several month period surrounding September, 1984 and continued thereafter until June of 1986 when the tanks were removed."

The expert's observations provide nothing which clearly explains the source of the hole in Tank No. 2, or whether the release of pollutants came about as the result of a condition that developed so rapidly it could properly be described as a momentary event. See, e.g., *Gridley Assocs.* v. *Transamerica Ins. Co.*, 828 P.2d 524, 525 (Utah Ct. App. 1992) (where break in underground gasoline tank was "clean," i.e., such

that it "would have had to have been caused by an adjustment of the [surrounding] area," discharge was sudden, notwithstanding its duration); *Wagner. v. Milwaukee Mut. Ins. Co.*, 145 Wis. 2d 609 (1988) (break in underground gas pipe accidentally caused during construction work was sudden even though not discovered for extended period of time), overruled on other grounds, *Just* v. *Land Reclamation, Ltd.*, 155 Wis. 2d 737 (1990). The issue is further clouded by an additional statement in the expert's affidavit that "[g]asoline also appeared to have been released from a siphon or riser pipe connecting [the defective tank to another tank]," and by the deposition of William Whittaker, the manager of the service station on the plaintiffs' property, who stated that he was present when the tanks were excavated and described the hole in the defective tank he saw as "a little, little pin hole." The leak of gasoline from Tank No. 2 may have begun slowly from a crack or small hole in the tank brought about by its aging, and then increased over time as the crack or hole widened. This type of release probably would not constitute a "sudden" event within the exception to the pollution clause. However, it is also possible that the discharge of pollutants occurred as the result of a sudden cause or a rapidly developing condition. The (undisputed) fact that the discharge of the pollutants occurred over a lengthy period of time does not automatically mean that the suddenness element has not been met, and it was wrong to decide the case solely on that point. But, until all the circumstances of the release in this case are fully developed, no adequate determination can be made as to whether the "sudden and accidental" exception is applicable. See *Polkow* v. *Citizens Ins. Co.*, 438 Mich. 174, 180 (1991) ("application of the pollution-exclusion clause and of the exception to that exclusion depend upon the facts of each case"). Therefore, summary judgment was not proper.

The judgment is reversed, and the case is to stand for further proceedings in the Superior Court.[7]

*So ordered.*

---

[7]Also on remand, the judge should consider an additional issue raised by Vermont Mutual in its opposition to the plaintiffs' motion for summary judgment that its insurance policy did not cover the site of the gasoline station at which the pollution originated. Vermont Mutual, it will be recalled, see note 4, *supra*, did not file a motion for summary judgment, and the judge did not reach this issue because he granted summary judgment for both insurers solely on the basis that the release was gradual.