U.S.A. v. Clean Harbors                    CV-89-109-L    01/17/95

**THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

United States of America


        v.                                #C-89-109-L

Clean Harbors of Natick, et al.


## ORDER

Presently before the court are the Motion of Chicago Insurance Company for Partial Summary Judgment (Doc. 515) and Third-Party Plaintiff's Memorandum of Law in Opposition to Defendant Chicago Insurance Company's Motion for Partial Summary Judgment (Doc. 525).  For the reasons set forth below, the motion for summary judgment is granted in part and denied in part.


BACKGROUND

In March 1989 the United States brought suit under the Comprehensive Environmental Response, Compensation and Liability Act, commonly known as CERCLA (42 U.S.C. § 9607), for response costs and damages regarding the Keefe Environmental Services, Inc. site (Keefe site).  The site is located in Epping, New Hampshire.

Subsequently, the State of New Hampshire filed a companion action on March 17, 1989 seeking damages against Clean Harbors

with relation to the Keefe site.

When the EPA and the State of New Hampshire brought the first party action in this case, against Clean Harbors, the complaints specifically alleged that Clean Harbors

> is a corporation which generated materials containing hazardous substances that were transported to the Keefe Environmental Services site for storage, treatment or disposal, and/or caused to be transported or transported materials containing hazardous substances to the Keefe site for storage, treatment or disposal.

On April 14, 1989, Clean Harbors filed third-party actions against its primary and excess general liability insurers, Atlantic, Chicago Insurance Company (Chicago) and Commercial Union. The purpose of the third-party suit was to obtain a declaration of the rights to defense and indemnification for any settlement or judgment in the Keefe litigation. Atlantic responded on June 16, 1989 filing an answer and counterclaim alleging that Clean Harbors made material misrepresentations in procuring the policies.

Atlantic alleged that Clean Harbors had made material misrepresentations, which increased the risk to Atlantic, in procuring the policies of insurance at issue in this action.

Procedurally, the following has transpired. Clean Harbors moved to dismiss Atlantic's counterclaim alleging fraud and mistake on July 11, 1989. A ruling was never made on this motion

2

because pursuant to an order of this court entered on May 1, 1990 discovery in the third-party action was effectively stayed pending disposition of the first-party action.

On December 2, 1992 the first-party action was dismissed pursuant to a consent decree. Chicago answered Clean Harbors' third-party complaint on October 28, 1992. This court issued a discovery order with January 1, 1995 as the date for completion of discovery.

The third-party defendant, Chicago Insurance Company, now alleges that under the absolute pollution exclusion endorsement there is no insurance coverage for the third-party plaintiff, Clean Harbors of Natick, Inc., under two of the four commercial umbrella insurance policies (Policy No. 255-C-11440, 3/21/78-3/21/79 and Policy No. 255-C-12451, 3/21/79-3/21/80, both with a policy limit of $1,000,000.). Due to the lack of coverage, Chicago contends, there are no material facts in dispute regarding the coverage afforded by the polices, and therefore, pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate as a matter of law.

Clean Harbors counters Chicago's allegation by maintaining that the defendant's motion for summary judgment is not ripe and therefore should be dismissed or stayed.

I.  Conflict of Laws

As a threshold matter, the court is obligated to first determine which state has jurisdiction over this case.  Following the conflict of laws determination, the court may then apply the governing law of that jurisdiction in resolving the current motion for summary judgment

In supporting the motion for summary judgment, Chicago avers that this court is obligated to apply Massachusetts' law in moving on the motion.  Clean Harbors, on the other hand, maintains New Hampshire law should apply.

At the outset, it is interesting to note that in response to the court's question as to what difference, if any, there is between New Hampshire and Massachusetts law with regard to the instant issue, neither counsel could inform or provide to the court any difference.  The court circumspectly wonders whether this disagreement over an issue of which the parties themselves are unable to provide distinguishing or enlightening arguments, should be regarded as merely unwarranted contrapositions.  After all, the current interpretations of New Hampshire and Massachusetts law, relative to this motion for summary judgment, is such that neither party would be disadvantaged if one choice of law governed as opposed to the other.  This court said it best in our holding that

> [t]he law of Massachusetts and New Hampshire appears to
> be identical regarding the interpretation of the policy
> language . . ., thereby making this "choice of laws"
> issue potentially moot.

K.J. Quinn & Co. v. Continental Casualty, 806 F. Supp. 1037, 1040
(D.N.H. 1992).

Nevertheless and for the sake of mapping a course for the parties, in moving on the conflict of laws issue presented, this court is obligated to apply the substantive law as that which would be applied were the case in a state court. Erie R.R. v. Tompkins, 304 U.S. 64, 77-78 (1938). "A contract is to be governed, both as to validity and performance, by the law of the state within which the contract has its most significant relationship." Ellis v. Royal Insurance Co., 129 N.H. 326, 331 (1987). Further, absent an express choice of law validly made by the parties, the place where the policy is issued will ordinarily govern. Glowski v. Allstate Ins. Co., 134 N.H. 196 (1991).

Consistent with Glowski, this court recently held in K.J. Quinn & Co., 806 F. Supp. at 1041, that in view of the fact that policies were negotiated and issued in Massachusetts, it is far more likely that the parties intend the consistent application of Massachusetts law to any controversies arising under the contracts.

In light of Glowski and K.J. Quinn & Co., the court opines Massachusetts law shall apply.

5

As a brief aside, Clean Harbors' argument that New Hampshire law should apply because the court has already ruled on the issue in denying Clean Harbors' motion to stay the action pending resolution of a more comprehensive New Jersey action borders on the disingenuous. As between New Jersey and New Hampshire law, under the facts of this case, naturally New Hampshire law would apply. After all, what possible interest does New Jersey have in litigation involving pollution in New Hampshire and a contractual relationship originating in the Commonwealth of Massachusetts?

Having come to a conclusion on the choice of law issue, the next task for the court involves a consideration of Chicago's motion for partial summary judgment.

## II. Summary judgment on the terms of the policy

The law is apodictic that summary judgment under Fed. R. Civ. P. 56(c) is proper only if, viewing the record in the light most favorable to the non-moving party, the documents on file disclose no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Oliver v. Digital Equipment Corp., 846 F.2d 103, 105 (1st Cir. 1988). "Only disputes over facts that might affect the outcome of the suit" are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine "if the

6

evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.; Oliver, 846 F.2d at 105. The moving party initially must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has made the required showing, the adverse party must "go beyond the pleadings" and designate specific facts to demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); Oliver, 846 F.2d at 105. According to Massachusetts law, if third party complaints are reasonably susceptible of an interpretation that the allegations therein fit the policy, the insurer has a duty to defend and summary judgment is not appropriate. See Sterilite Corporation v. Continental Casualty Company, 17 Mass. App. Ct. 316, 318 (1983), review denied, 391 Mass. 1102 (1984).

In interpreting the construction of a contract, the Commonwealth of Massachusetts has adopted a policy which may be characterized as the ambiguity rule. Specifically, in Manning v. Fireman's Fund American Insurance Companies, 489 N.E. 700, 701 (Mass. 1986), the court stated that it must construe the words of a policy according to "the fair meaning of the language used, as applied to the subject matter." Additionally, where the terms of an exclusionary clause are plain and free from ambiguity, a court may not construe them strictly against an insurer, but rather

7

must construe the terms in their usual and ordinary sense. See Barnstable County Mutual Fire Insurance Company v. Lally, 373 N.E. 2d 966 (1978); Slater v. United States Fidelity & Guarantee Co., 379 Mass. 801, 803 (1980).

Synthesizing the Manning and Barnstable cases, in reviewing terms of any insurance policy in the context of a motion for summary judgment, a court is obligated to first evaluate the presence of any ambiguity. If there are terms of a policy which are unambiguous, a court should be extremely reluctant to accord the language any meaning other than its natural and ordinary meaning. Contrastingly, where the language is ambiguous, and one possible interpretation favors coverage, resolution of the ambiguity should fall in favor of the insured.

At issue in the instant motion for summary judgment are two endorsements, within insurance policies, which concern contamination or pollution liability. The first endorsement provides:

> This endorsement modifies the provision of the policy relating to Personal Injury or Property Damage Liability, but is inapplicable in the States of Maryland, New Hampshire and Vermont.
>
> Exclusion of Contamination or Pollution
> It is agreed that such insurance as is afforded by this policy shall not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any

8

watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

The second endorsement, entitled "Contamination and Pollution Endorsement Absolute", provides:

This policy shall not apply to personal injury or property damage arising out of the discharge, dispersal, release or escape of:

(1)  smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water;[1]

(2)  oil or other petroleum substance or derivative (including any oil refuse or oil mixed with wastes) into or upon watercourse or body of water.

In the case at hand, Chicago alleges that it is "entitled to summary judgment as a matter of law because there are no material facts in dispute regarding the lack of coverage afforded by these policies to [Clean Harbors] in connection with the underlying policies." Doc. 515. Succinctly, Chicago maintains that "[t]he plain and clear language of the absolute pollution exclusion endorsement contained in the Chicago policies specifically precludes coverage for personal injury or property damage claims asserted against the Third-Party Plaintiff in connection with the

_____

[1] Additionally, Clean Harbors alleges that, with respect to policy number 255-C-11440, there is a handwritten legend on the absolute endorsement providing "unless sudden or accidental."

9

Keefe site."  Doc. 515.

For purposes of acting on the instant motion for summary judgment, the court will review the issues and documents in a manner amenable to the non-moving party, Clean Harbors.  Oliver, 846 F.2d at 105.

Clean Harbors represents that the motion for summary judgment is fundamentally flawed in that Chicago, in arguing the unambiguous nature of the policy, relies on only one (the Contamination and Pollution Endorsement Absolute) endorsement for interpretation and fails to appropriately consider, construe or compare this lone endorsement within the context of the entire language of the policies.  In support of this assertion, Clean Harbors contends that the language of these two endorsements, when considered together, create a patent ambiguity relative to contamination and pollution coverage.  Succinctly, according to Clean Harbors' argument, when both endorsements are read together, there is ambiguity in that both endorsements, purporting to provide similar "limiting coverage", differ as to when and where liability will occur.  As stated by Clean Harbors, "one of these exclusions excludes property damage arising out of the discharge or release of contaminants unless: (a) such releases are `sudden and accidental' or (b) occur in the state of New Hampshire."  Doc. 525, page 4.  On the other hand, the second

10

endorsement merely excludes property damage arising out of the discharge, dispersal, release or escape of contaminants. Within this second endorsement there is no language indicating applicability to certain states, nor is there typed language pertaining to "sudden or accidental" release. Clean Harbors contends that two endorsements are intended to be read together if both endorsements relate to identical, or at least similar, areas of coverage - namely release of contamination or pollution.

Clean Harbors' argument that two endorsements within the same policy, like the endorsements and policies presented here, should be read or considered together in evaluating the extent of insurance coverage is misplaced. Upon reviewing both endorsements presented in policies submitted by Clean Harbors, there are significant and substantial indications that the endorsements are not intended to collectively relate to identical areas of coverage. Rather, the first endorsement appears, according to titles or headnotes, intending to relate solely to nuclear energy liability and nuclear contamination and pollution, whereas the second endorsement is far broader in that it encompasses a wider or unlimited range of contamination and pollution.

Although Clean Harbors is correct in that there are instances where the terms of an exclusion must be read in

11

conjunction with or under the entire purview of a contract, (<u>Jefferson Ins. Co. v. Holyoke</u>, 23 Mass. App. Ct. 472, 474-475 (1987)("Words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract."), such is not the case here. Fundamentally, the court reads the second endorsement as ineluctably yexclusive and potentially superior to the nuclear contaminant (first) endorsement. The second endorsement unequivocally and unambiguously is entitled "Contamination and Pollution Endorsement <u>Absolute</u>." Emphasis added. The <u>American Heritage Dictionary</u> defines "absolute" as "perfect in quality or nature; complete. . . . Not limited by restrictions or exceptions; unconditional. . . . Unrelated to and independent of anything else . . . ." <u>Black's Law Dictionary</u> parrots this definition by defining "absolute" as "Complete; perfect; final; without any condition or incumbrance; . . . without relation to or dependence on other things or persons." With these definitions in mind, it is difficult for the court to define absolute in terms other than all encompassing and superseding all others. To provide life to Clean Harbors' contention that both endorsements are intended to be read together would give dramatic and inappropriate construction to the definition of absolute. See <u>Hyfer v. Metropolitan Life Ins. Co.</u>, 318 Mass. 175, 178 (1945)("A policy

12

of insurance whose provisions are plainly and definitely expressed in appropriate language must be enforced in accordance with its terms." Stankus v. New York Life Ins. Co., 312 Mass. 366, 369 (1942)).

The inference that both endorsements should be read together and applied together also runs afoul to the established principal that where an endorsement follows a policy, the language within the endorsement must be construed in such a manner as superseding any preceding inconsistent or irreconcilable language within the policy. Couch on Insurance (Rev. ed.) § 4:36 (1984 and 1993 supp.); 13A Appleman, Insurance law and Practice, § 7537; See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118 (2d Cir. 1990). As Chicago correctly points out, where the words contained in a policy are plain and unambiguous, the words must be accorded their plain and ordinary meaning. Manning v. Fireman's Fund American Ins. Cos., 397 Mass. 38 (1986). Further, words do not become ambiguous simply because the parties strive for different meanings. See Computer Systems of America, Inc. v. W. Reserve Life Assurance Co., 19 Mass. App. Ct. 430, 433-34 n. 5 (1985).

In continuing to address the "absolute" aspect of the second endorsement, Clean Harbors maintains the absolute exclusion is contrary to the reasonable expectation of coverage, and thus this

court should refuse to enforce such a provision. After all, Clean Harbors contends, what possible policyholder would subscribe to a policy that, in essence, covers nothing intended by the policyholder? While this argument has some appeal, unfortunately the law provides for a divergent resolution. As this court has alluded to previously, where terms of an instrument are unambiguous, a court, in construing terms, is not provided the opportunity or leeway to consider the reasonable expectations of the parties. See Johnson Controls, Inc. v. Bowes, 381 Mass. 278 (1980). In fact, other courts, in reviewing and construing absolute endorsement provisions similar to the one currently under review by this court, have strictly enforced the provisions according to the absolute terms. Essex Ins. Co. v. Tritown Corp., C.A. 92-12661-WGY (D.Mass., July 20, 1994); United States Liability Insurance Co. v. Bourbeau, C.A. No. 93-10606-MAP (D.Mass. July 20, 1994); Mark D. Plevin, Basics of Insurance Coverage Litigation III Environmental Litigation, 1165, 1173 (ALI-ABA, 1994).

In carefully reviewing absolute exclusions and striving to provide some justification and merit to Clean Harbors' arguments, the court, nonetheless, is repeatedly drawn to the conclusion that there is no uncertainty as to the meaning and provided coverage of the Contamination and Pollution Endorsement Absolute.

14

According to the fair meaning of the language used in this endorsement, the court opines that an objective insured reading the exclusionary language of such an endorsement would reasonably interpret the language in a way which would not provide coverage in a manner Clean Harbors is now alleging. Atlantic Mutual Insurance Co. v. McFadden, 413 Mass. 90, 92 (1992). Fundamental to this conclusion, in reading absolute endorsements like the one presented here, it is quite clear that the underlying purpose of the language is to supersede any other related provisions of a policy. It is also clear the such an endorsement renounces coverage for all damages deriving from the discharge of pollutants.

A)   Coverage under policy number 255-C-12451.

Based on the aforementioned review concerning supersession and applicability of certain endorsements, this court opines that the language of the "Contamination and Pollution Endorsement Absolute" contained within policy number 255-C-12451 unambiguously supersedes all other related provisions of the policy. The terms of the policy specifically and unequivocally exclude coverage in instances where certain forms of pollution cause personal injury or property damage. As such, the personal injury and property damage claims in which Clean Harbors seeks

15

defense costs and indemnification are specifically excluded from coverage by the language of absolute endorsement provision of the policy. The documents on file, relative to coverage under policy number 255-C-12451, do not disclose any genuine issue of material fact, and thus, with respect to this policy summary judgment is properly granted.

B)   Coverage under policy number 255-C-11440.

With respect to coverage under policy number 255-C-11440, the analysis concerning coverage would be identical to the aforementioned discussion, if not for the presence of an important twist. Succinctly, upon the absolute contamination and pollution exclusion within policy number 255-C-11440, there is handwritten language, albeit partially unascertainable by the court given the photocopied nature of the document, which according to Clean Harbors purportedly states "unless sudden or accidental."

If the court considers this handwritten legend in a light most hospitable to Clean Harbors, including all reasonable inferences, the court reasonably comes to the conclusion that the absolute exclusion is limited, by a condition, in its reach and application. Succinctly, the possibility that the handwritten legend could, by negating or modifying the absolute aspect of the

16

endorsement, provide for indemnification or impart liability by or on Chicago is enough to warrant a conclusion that there is an issue of material fact needy of review and determination. Goodman v. Aetna Casualty and Surety Company, 412 Mass. 807 (1992). Chicago's inference that, relative to policy number 255-C-11440, there is no ambiguity because policy number 255-C-11440 should be afforded an identical interpretation, without regard to the alleged handwritten legend, as policy number 255-C-12451 has little merit. After all, is it axiomatic that separately negotiated and added terms in a contract are entitled to greater weight than standardized terms. See Carrigg v. Cordeiro, 26 Mass. App. Ct. 611 (1988). Thus, although the typed portion of the endorsement indicates absolute application, thereby relieving Chicago of liability for indemnification, the added written terms, if interpreted in a manner consistent with Clean Harbors' reading, could certainly impart degrees of liability on Chicago if contamination or pollution were of the sudden or accidental nature. See New Hampshire Ball Bearings v. Aetna Casualty and Surety Company, No. 94-1540 (1st Cir. January 5, 1995). As Chicago itself points out, where there is a conflict or inconsistency between a printed or standard provision and one that is compiled and inserted by the parties, the later insert by the parties should prevail in resolution of construction issues.

17

_Id._ Accordingly, summary judgment, with respect to policy number 255-C-11440, is denied.

CONCLUSION

In light of the above, viewing the record in the light most favorable to Clean Harbors, this court opines that the documents on file and presented to the court do not disclose any issue of material fact concerning the coverage and insurance liability under policy number 255-C-12451. As there is no ambiguity relative to this policy, Chicago's motion for summary judgment, relating to this policy number 255-C-12451 is granted. Further, as the documents on file and presented to the court do disclose very real and substantial issues of material fact concerning coverage and insurance liability under policy number 255-C-11440, summary judgment with respect to this policy is denied.

January 17, 1995

_____
Martin F. Loughlin
Senior Judge

John M. Edwards, Esq.
Stsanley N. Wallerstein, Esq.
Richard J. Riley, Esq.
Vincent Wenners, Esq.

18