Hinkle, J.
Plaintiff American States Insurance Company (“American States”) filed this declaratory judgment action to determine whether plaintiff was obliged to defend or indemnify insureds Robert and Carole Kirsch (“the Kirschs”) against an ongoing investigation and potential legal action from the Department of Environmental Protection (“DEP”). American States has moved for summary judgment on the defense and indemnification issues.
BACKGROUND
Defendants and insured parties Robert and Carole Kirsch were the owners of commercial property located at 229-231 North Main Street, Natick, Massachusetts (“the Site”) between January 1978 and April 1984. From April 1984 to the present, Carole Kirsch has been the sole owner of the property. Between July 1981 and July 1984, both Kirschs were named insureds under a comprehensive general liability policy issued by the Covenant Insurance Company; American States is a successor in interest to the Covenant Insurance Company.
The Site has been used since 1960 for commercial dry cleaning operations. Tetrachloroethylene (“PCE”) is a chemical used in the dry cleaning process. On July 1st, 1991, the Kirschs received a Notice of Responsibility (“NOR”) letter from the DEP according to G.L.c. 2IE; the NOR letter stated that a release of PCE had been discovered at the Site. The Kirschs consequently hired Clean Harbors Environmental Engineering, Inc. to investigate the DEP’s claims and to assist in their defense. On April 24th, 1992, Clean Harbors issued a report in conjunction with DEP procedures: this report indicated that PCE contamination had been found at the Site. The report did not indicate the source or manner of the releases that may have caused the contamination.
The insurance policy in effect between 1981 and 1984 states in part:
The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage . . .
Exclusions
This insurance does not apply:
‡ ‡ * sfc %
(f) to bodily injury or properly damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental; . . .
The NOR letter gave notice to the Kirschs of the DEP’s determination that a release of hazardous materials had occurred at the Site. However, it did not state the DEP’s determination of how PCE had been released. Viewing the facts in the light most favorable to the defendants, it is clear that although the Kirschs and the prior owners of the Site used several methods to reduce the probability of PCE release, some PCE was released during ordinary business operations. The defendants released the PCE contained in still bottom residue, a byproduct of PCE recycling, which was burned after being diluted in fuel oil in a minute *591 concentration. They disposed of PCE contaminated powder and lint by placing it in drums and using a licensed hauling company to remove them. A “sniffer” machine was installed to reduce emissions of PCE; once each day minute amounts of steam possibly containing PCE were released as part of the sniffer’s operations.
American States has moved for summary judgment on the ground that since no evidence has been offered that the chemical release occurred suddenly and accidentally, the defendants are extremely unlikely to be able to prove their case at trial, and hence plaintiffs must prevail at summary judgment. The Kirschs argue that summary judgment is inappropriate where the possibility exists that some of the PCE released was released suddenly and accidentally. They argue that further investigations of the Site are needed before the possibility of sudden and accidental release can be eliminated. Since the cause of the PCE release has not been determined, and since American States has not offered expert testimony to prove that no part of the release was sudden and accidental, defendants argue that the issue is inappropriate for summary judgment and should await trial.
DISCUSSION
This Court allows summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The nonmoving party’s failure to prove an essential element of its case “renders all other facts immaterial” and mandates summary judgment in favor of the moving party. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 711 (1991), citing Celotex v. Catrett, 477 U.S. 317, 322 (1986).
American States has moved for summary judgment on two dispositive issues: its duty to defend the Kirschs against the DEP, and its duty to indemnify the insured defendants for the cost of pollution cleanup measures that may be ordered by the DEP. For the following reasons, summary judgment for plaintiff is ALLOWED.
The determination of whether American States must defend the insured parties involves a preliminary question: did the DEP’s correspondence qualify as a “suit” “seeking damages” and hence trigger a potential duty to defend under the insurance policy? According to the record, the DEP has not instituted a lawsuit against the plaintiffs; the only action taken has been the issuance of a Notice of Responsibility to the plaintiffs, followed by further correspondence. The NOR refers to the potential imposition of cleanup costs, not to “damages” specifically. While the insurance policy between the parties states that American States’ obligation extends only to the defense of “suits” brought against the insured parties that seek “damages,” the issuance of the NOR is similar enough to the commencement of a legal action to trigger the insurer’s duty to defend under the insurance contract. Hazen Paper Co. v. United States Fidelity and Guarantee Company, 407 Mass. 689, 694-6 (1990). In Hazen Paper, the Supreme Judicial Court ruled that a letter from the Environmental Protection Agency alleging that an insured party was potentially responsible for releases of hazardous materials had an effect “so substantially equivalent to the commencement of a lawsuit that a duty to defend arose almost immediately.” Id. at 696. In this case, the NOR sent to the plaintiffs included a determination that they were responsible for the release of oil and hazardous material, and a regulatory order demanding certain remedial measures. Following the policies set out in Hazen Paper, I rule that the NOR is sufficiently equivalent to a complaint to trigger American States’ potential contractual duty to defend under the insurance policy. Hazen Paper Co. v. United States Fidelity and Guarantee Company, supra, see also Aetna Cas. & Sur. Co. v. George, Superior Court Civil Action No. 86-1625 (Middlesex 1986) (McHugh, J.) at 16 (2 Mass. L. Rptr. 177, 3 Mass. L. Rptr. 246).
Not every lawsuit against insured parties obliges their insurance company to defend them. The test for determining if an insurer has a duty to defend an insured contains two parts: the first part is an analysis of whether “the allegations of the complaint are ’’reasonably susceptible" of an interpretation that they state or adumbrate a claim covered by the policy terms." Sterilite Corp. v. Continental Casualty Co., 17 Mass.App.Ct. 316, 318 (1983), quoting Vappi & Co. v. Aetna Cas. & Sur. Co., 348 Mass. 427, 431 (1965). The process is one of envisaging what kinds of losses may be proved as lying within the range of the allegations of the complaint, and then determining whether any such loss fits “the expectation of protective insurance reasonably generated by the terms of the policy.” Sterilite Corp. v. Continental Casualty Co., supra at 318. “There is no requirement that the complaint specifically and unequivocally make out a claim within the coverage.” Id., at 319.
No Massachusetts court has ruled on what test should be used when the action taken against the insured does not involve a “complaint.” The lack of a complaint gives this Court two alternatives: either to skip the complaint analysis and go on to the second part of the duty to defend test, or to view the NOR as a complaint by analogy and analyze it through the Sterilite test. The issue of which approach is correct need not be decided because both reach the same result here. The NOR contains a determination that “a *592 release of oil or hazardous material has occurred at the subject site.”[3] No explanation is given as to the cause of the release or the manner in which the release is alleged to have taken place. A factual allegation such as this in a complaint would necessarily include the possibility that the release had taken place suddenly and accidentally and hence be covered under the insurance contract between the parties. A type of coverable loss clearly fits within the allegations of the complaint; therefore the first part of the duty to defend test is satisfied.
If the complaint test is passed, the insurer can still avoid defending the insured parties “when it demonstrates with conclusive effect on the third party that as matter of fact — as distinguished from the appearances of the complaint and policy — the third party cannot establish a claim within the insurance,” Id. at 323. “Conclusive effect” does not here refer to a burden of proof, but to the fact that, to avoid the duty to defend, the insurance company must demonstrate in a manner that will have legally binding effect on the party suing the insured that none of the alleged damages are coverable. Id. at 323. The second part of the duty to defend test thus merges with the test for indemnification: the insurer can escape the duty to defend only by proving that it will have no duty to indemnify any of the claims of the insured parties that may result from the legal action. The insurer must prove that the claims at issue in this case are not claims that are coverable by the policy.
The Supreme Judicial Court interpreted the phrase “sudden and accidental” in Lumbermens Mutual Cas. Co. v. Belleville Industries, Inc., 407 Mass. 675 (1990). The Court determined that, in addition to referring to unexpected and unforeseen releases or discharges, “only an abrupt discharge or release of pollutants falls within the exception.” Id. at 681.
In Liberty Mutual Ins. Co. v. SCA Services, Inc., 412 Mass. 330 (1992), the Supreme Judicial Court analyzed an insurer’s duty to defend an insured in an action brought for hazardous waste where a “sudden and accidental” exception to the policy’s pollution exclusion applied. The Court dismissed defendant’s argument that “the insurer’s burden for summary judgment is an affirmative showing that there is no possibility that at least one claim against SCA may involve a ‘sudden and accidental’ discharge.” Id. at 337.
SCA’s opposition to the insurer’s motion for summary judgment amounts essentially to speculation that, within the routine operations of the landfill, any single discharge may have occurred suddenly and accidentally. Such a theory, even if accepted as true, cannot contradict a reasonable reading of the allegations that the entire pattern of conduct was not a “sudden and accidental” occurrence. Id. at 338.
The Court restated the “indemnification” test: “the crucial question is whether, when considered in the light most favorable to SCA [the nonmovant], the summary judgment record alleges ”a liability arising on the face of the complaint and policy." Id. at 338, quoting Sterilite, supra, at 324.
SCA Services marked a change in the Supreme Judicial Court’s analysis of the duty to defend. In SCA Services, the Supreme Judicial Court appeared to require that the nonmovant present at least some evidence, beyond a merely hypothetical possibility, of damage within the scope of the policy in order to overcome an insurer’s motion for summary judgment on the duty to defend issue. This new requirement was followed by the Superior Court (McHugh, J.) in Aetna Cas. & Sur. Co. v. George, supra, see also Covenant Insurance Co. v. Friday Engineering, Inc., 742 F.Supp. 708 (D.Mass. 1990); Johnson v. Aetna Cas. & Sur. Co., 741 F.Supp. 298 (D.Mass. 1990).[4]
However, in Goodman v. Aetna Cas. & Sun Co., 412 Mass. 807 (1992), the Supreme Judicial Court overruled an award of summary judgment in favor of the insurance company in a similar situation. The Court examined the factual record and reversed summary judgment on the basis that the movant’s facts had not disproved the possibility of sudden and accidental pollutant release. Id. at 813. Specifically, while the insured’s facts did not present any evidence of cover-able pollutant release, the insurance company’s evidence “provides nothing which clearly explains the source of the hole in Tank No. 2, or whether the release of pollutants came about as the result of a condition that developed so rapidly it could properly be described as a momentary event.” Id. at 812. In other words, since the insurer had not proven that all leakage was not sudden and accidental, it could not prevail at summary judgment.
The difference between Goodman and SCA Services determines the result in this case. Here the defendants have provided no evidence to support their theory that some of the pollution released was released “suddenly and accidentally”; they only argue that it is hypothetically possible that some of the release fits the exception to the pollution exclusion. The plaintiff has not provided evidence completely disproving' this hypothetical theory. Instead, American States has offered evidence to prove that much of the pollution released was released gradually and non-accidentally. Under the Goodman analysis, the defendants’ hypothetical claim would defeat summary judgment. Under the SCA Services standard, summary judgment should be allowed because the nonmoving parties have not produced any probative evidence of sudden and accidental release.
A recent Appeals Court ruling on the pollution exclusion affirms the rationale of SCA Services, leading this Court to decide the pending summary judgment motion in the plaintiffs favor. In Landauer, Inc. *593 v. Liberty Mutual, 36 Mass.App.Ct 177 (1994), the Court upheld summary judgment in favor of the insurer, expressly relying upon the argument of SCA Seruices that a statement of the possibility of coverable damage, without more, is insufficient to overcome opponents’ motion for summary judgment.
The Supreme Judicial Court’s most recent case on this issue, Nashua Corp. v. First State Insurance Co., 420 Mass. 196 (1995), reversed a finding of summary judgment in favor of the insurer. However, in Nashua Corp., the record included two examples of unusual pollution releases: the sudden burst of a tank seal and a release caused by a fire and subsequent explosion. Id. at 203. The Court determined that these releases raised material factual questions concerning which portion of the pollutants were released suddenly and accidentally, and which were released gradually. Id. at 203.
Plaintiff argues at length in its brief that the defendants’ burden in resisting summary judgment is heavier because they bear the burden of proof at trial concerning the pollution exclusion clause, since the clause is an exception to an exclusion. The Court need not rule on this issue in this opinion. The question of which party bears this burden has not been ruled on by the Supreme Judicial Court.[5] The federal court has interpreted rulings of the Supreme Judicial Court to indicate that it would rule in favor of the burden resting on the insured party. See, e.g.: Johnson v. Aetna Cas. & Sur. Co., 933 F.2d 66 (1st Cir. 1991); Interex Corp. v. Atlantic Mut. Ins. Co., 874 F.Supp. 1406 (D.Mass. 1995). A leading insurance law treatise mentions authority for placing the burden on either party. Couch on Insurance 2d Section 79:385. In this case, the issue is not dispositive. Assuming defendants have this burden, they would need to offer some evidence to overcome it to avoid summary judgment. Kourouvacilis v. General Motors Corp., supra at 711. However, even if the burden were shifted to the plaintiff, the defendants would still not be able to avoid summary judgment by presenting a purely hypothetical case that issues of material fact possibly exist.
It is difficult to imagine a summary judgment motion that would succeed were the nonmovants allowed to overcome it by the argument that a possibility existed that one of the movant’s facts was not an absolute certainly. The purpose of summary judgment is not to allow one side to prevail only if that party presents its case with absolute certainty, eliminating every hypothetical possibility of mistake. Instead, the moving party must simply demonstrate the absence of a triable issue; the nonmovant cannot rely on allegations of disputed facts but must respond by alleging specific facts that demonstrate the existence of a genuine disputed issue. Pederson v. Time, Inc., supra at 16-17.
Defendants provide evidence that is probative of the limited nature of the investigation of the Site. They offer the fact that Clean Harbors has not yet determined the cause of the release as evidence of the hypothetical possibility that some of the release was sudden and accidental.[6] Defendants admit that at least some PCE was released in the course of ordinary business operations when the property was operated by the previous owner, Leo Davis.[7] The defendants offer the fact that the ordinary business releases alleged by plaintiffs are unlikely to account for the entire amount of contamination to support their purely speculative hypothesis that some of the contamination must come from a sudden or accidental release:
At this stage in the site investigation, it remains possible that the PCE contamination of the Site resulted from a sudden and accidental spill. In fact, if no off-site source is implicated, a spill of a substantial amount of PCE on one or more occasions is more likely the method of contamination than routine business practices, given that the PCE had to reach the groundwater, which is more than twenty feet below the surface grades at the Site. (Affidavit of Dana Simpson, employee of Clean Harbors Environmental Engineering, Inc., at 13.)
While the defendants’ evidence supports the inference that some of the contamination was caused in a different manner from the theories discussed in plaintiffs brief, it does not prove that any of the contamination that was not caused by Leo Davis’s business practices was released suddenly and accidentally. Unlike Nashua Corp., where evidence existed of an event that could possibly have caused a sudden and accidental release, this case contains no evidence of a fire or an abrupt accident.
The defendants provide no evidence beyond mere speculation to prove that any PCE was released in a sudden and accidental manner. In the absence of any fact supporting the defendants’ inference that some of the PCE release was sudden and accidental, the plaintiffs must prevail on summary judgment.
ORDER
For the foregoing reasons, it is hereby ORDERED that summary judgment enter for plaintiffs. It is also ORDERED that a declaration enter that American States Insurance Company has no duty to defend or indemnify Robert and Carole Kirsch in the action instituted by the Department of Environmental Protection in its July 1, 1991 Notice of Responsibility.

See the Notice of Responsibility issued by the DEP to Robert Kirsch (Plaintiffs Exhibit 28) at 2.

Case decided by the local federal court according to Maine law, but with reference to several opinions of the Supreme Judicial Court.

The Supreme Judicial Court considered but did not rule on this issue in Polaroid Corp. v. The Travelers Indemnity Group, 414 Mass. 747, 753 at note 7 (1993).

Defendants’ evidence of this is shown in the deposition of Stephen Applebaum, an employee of Clean Harbors Environmental Engineering, Inc. (defendants’ exhibit C at 103):
Q:Did your investigation at any time yield evidence of any sudden and accidental spills?
A:I’m not sure that enough investigation was done to be able to answer that question.
And again, in the deposition of Mr. Applebaum at 111:
Q:Based on the limited site investigation that Clean Harbors has done thus far, can you say with any degree of certainty how the Kirsch property came to be contaminated with PCE?
A:No.
The uncertainty about the cause of the PCE release is repeated in the deposition of John J. Fitzgerald, deputy regional environmental engineer for the Northeast Regional Office of the DEP (defendants’ exhibit A). Mr. Fitzgerald states that the DEP only has unconfirmed suspicions of the cause of the PCE release and that the Site needs further investigation before the DEP can reach a conclusion.

Evidence for this comes from an affidavit of Mr. Davis. Mr. Davis states that “before the removal of the 10,000 gallon underground storage tank,” [he] “would from time to time dispose of the still bottom residue in that tank.” He also explains the sniffer process, showing that minute amounts of PCE were released during the release of steam from the sniffer (Davis affidavit at 5, 8).